NOT FOR PUBLICATION                        [Dkt. Ents. 31 & 32]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| THE ESTATE OF MAY ELIZABETH HUNISH, et al., | : | |
| Plaintiffs, | : | Civil No. 09-3163 (RMB/AMD) |
| v. | : | **OPINION** |
| ASSISTED LIVING CONCEPTS, INC., | : | |
| Defendant. | : | |

Appearances:

Shanna McCann
Chance & McCann LLC
P.O. Box 10
Woodstown, NJ 08098

     Attorney for Plaintiffs

Tod S. Chasin
Buchanan Ingersoll, PC
700 Alexander Road, Suite 300
Princeton, NJ 08540

     Attorney for Defendant.

**BUMB**, UNTIED STATES DISTRICT JUDGE:

     This matter comes before the Court upon motions to compel arbitration and to dismiss, brought by defendant Assisted Living Concepts, Inc. (the "Defendant"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., as well as Federal Rule of Civil Procedure 12(b)(6).  The plaintiffs, the Estate of May E.

1

Hunish, Warren Buirch, and Todd Buirch (the "Plaintiffs"), have opposed the motions.  For the reasons that follow, the Court will partially grant and partially deny the motion to compel arbitration, and will stay those claims for which arbitration is not required.

## BACKGROUND FACTS

May Hunish was a resident of the assisted living facility Maurice House in Millville, New Jersey, which is owned and operated by Defendant.  The Amended Complaint alleges that May Hunish moved to Maurice House in reliance upon the assurance that she could pay to live at the facility until her private resources were depleted, at which time Medicaid would assume her payments.  However, when she ultimately depleted her personal funds in April 2007, she was told that the Medicaid payments would cover only a shared studio apartment, which, the Amended Complaint avers, was too small to accommodate two people.  May Hunish was hospitalized as a result of an unrelated injury (which Plaintiffs aver was caused by Defendant's negligence), during which time Maurice House discharged her from the facility, claiming it had run out of space for Medicaid-funded residents.  The Amended Complaint causally attributes May Hunish's death to the depression she experienced from having been discharged from Maurice House.  It avers that May Hunish's son and grandson, Warren and Todd Buirch, experienced severe emotional distress as a result of the

incident.

Warren and Todd Buirch brought this lawsuit on their own behalf and on behalf of May Hunish's estate in June 2009. Defendant then filed motions to compel arbitration and to dismiss.  At oral argument on the motions, it became clear that ambiguities in the Complaint and inconsistencies in Plaintiffs' litigation theory prevented a conclusive ruling on the motions. The Court therefore denied the motions without prejudice and granted Plaintiffs leave to amend their pleading.  Plaintiffs so amended and, in turn, Defendant renewed its motions.

### STANDARD OF REVIEW

Motions to compel arbitration are reviewed under the standard for summary judgment found in Fed. R. Civ. P. 56(c). Markel Int'l Ins. Co. v. Westchester Fire Ins. Co., 442 F. Supp. 2d 200, 202 (D.N.J. 2006) (citing InterDigital Comm. Corp. v. Fed. Ins. Co., 392 F. Supp. 2d 707, 711 (E.D. Pa. 2005)). Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under

3

the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant." Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In deciding a Rule 12(b)(6) motion to dismiss, courts must view all allegations in the complaint in the light most favorable to the plaintiff, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994), and accept any and all reasonable inferences derived from the facts alleged, Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991). Based upon the face of the complaint, courts must decide if "enough facts to state a claim for relief that is plausible on its face" have been alleged. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  Courts must review the complaint to determine: (1) if it alleges genuine facts, rather than mere legal conclusions; (2) if the facts alleged (assumed to be true), as well as the reasonable inferences drawn therefrom, establish a claim; and (3) if relief based upon the facts alleged is

plausible.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949–50 (2009).

**DISCUSSION**

## 1.  <u>Motion to Compel Arbitration</u>

Defendant's motion to compel arbitration seeks to enforce the arbitration provisions of contracts signed by Warren Buirch, holder of May Hunish's power-of-attorney.  Two contracts are relevant here.  First, the residency contract signed in March 2005 (the "2005 Contract"), when May Hunish first became a resident of Maurice House, provides that all disputes arising from the contract or the services provided by Maurice House "shall be submitted to binding arbitration."  (Pl.'s Ex. B ("2005 Contr."), at 9 [Dkt. Ent. 13].)  It also states, "The parties understand that as a result of initialing below and signing this Agreement any Claims between the parties cannot be litigated in a court of law or equity before a judge or jury."  (<u>Id.</u>)  The contract details the procedures to be used for arbitration, including limitations on discovery and damages.  (<u>Id.</u> at 9–12.) The second contract, signed in October 2006 (the "2006 Contract"), includes a complete "Arbitration Agreement" appended to a new Residency Agreement.  Like the 2005 Contract, this one provides that, "Any controversy, dispute, disagreement or claim of any kind or nature, arising from, or relating to this Agreement, . . . shall first be settled by arbitration.  This means that neither party will be able to file a lawsuit in any

court . . . ."  (Pl.'s Ex. C ("2006 Contr."), App'x A, at 1 [Dkt. Ent. 13].)  The second arbitration agreement is different from the first in at least two important respects: (1) it advises the parties, in capital and bold typeface, to "OBTAIN THE ADVICE AND ASSISTANCE OF LEGAL COUNSEL TO REVIEW THE LEGAL SIGNIFICANCE OF THIS ARBITRATION PROVISION . . . ," (<u>id.</u>), and (2) rather than detailing the arbitration procedures, it merely relies upon those of the National Arbitration Forum.

### a.   Which Contract Controls?

In deciding which of the two contracts control here, the Court's starting point is the contracts themselves. Specifically, the 2006 Contract states, "This Agreement supersedes all previous communications, representations, or agreements, either verbal or written, between the parties." (2006 Contr., § V, ¶ 2.)  This provision dictates that the 2006 Contract controls, unless the provision itself, or the contract generally, is invalid.

Plaintiffs argue that the 2006 Contract is invalid for two reasons.  First, they argue that a second contract may supplant an earlier contract only with a new exchange of consideration; here, they contend, there was no new consideration.  (Pl.'s Arb. Opp'n Br. 9-10.)  Plaintiffs are correct that new consideration is required to alter the terms of an existing agreement.  <u>See</u> <u>County of Morris v. Fauver</u>, 153 N.J. 80, 100, 707 A.2d 958 (1998)

6

(holding that contract modification requires new consideration);
Ross v. Orr, 3 N.J. 277, 282, 69 A.2d 730 (1949) ("[T]he terms of
an agreement may be altered or changed by a subsequent agreement
if based on proper consideration."). Any new advantage, however
insignificant, is sufficient consideration to form a contract.
Coast National Bank v. Bloom, 113 N.J.L. 597, 602, 174 A. 576
(1934). In other words, to determine whether the 2006 Contract
was formed with new consideration, the Court must decide if May
Hunish received something more than that to which she was already
entitled under the first contract. See Williston & Lord, 3
Williston on Contracts § 7:37 (4th ed. 2008). Here, Defendant
had a right to terminate the 2005 Contract "at any time . . .
with or without cause." (2005 Contr. § VII.) Thus, the
continuation of May Hunish's residency benefits, rather than
termination, constitutes new consideration. See Williston on
Contracts, supra, § 7:41 ("If one is privileged to avoid a
contractual duty or to refuse to perform under a contract, and
promises to perform or does perform in consideration of the
promise of some additional payment by another . . . , the promise
to perform . . . is consideration, since it constitutes a legal
detriment that is undergone by the party promising or
performing."). Accordingly, the 2006 Contract is not invalid for

7

lack of consideration.[1]

Plaintiffs propound a second reason for the 2006 Contract's invalidity: fraud.  (Pl.s' Arb. Opp'n Br. 10.)  Beyond repeated assertions that Defendant fraudulently induced Plaintiffs' assent to the 2006 Contract, Plaintiffs have offered no record evidence of such misconduct.[2]  Plaintiffs characterize their entire relationship with Defendant as being tainted by fraud, but have not explained in what way they were induced to assent to the 2006 Contract by any specific fraudulent conduct.  Taking as true Plaintiffs' allegation that Defendant verbally mischaracterized the 2006 Contract, Plaintiffs were free to read and apprehend its terms on their own.  Indeed, the arbitration agreement contained within the 2006 Contract states in bold-face capitalized type, "BECAUSE THIS ARBITRATION PROVISION ADDRESSES IMPORTANT LEGAL RIGHTS, THE RESIDENCE ENCOURAGES AND RECOMMENDS THAT YOU OBTAIN

---

[1] The second contract should control for an additional reason as well.  "[W]here a right or legal duty owing to the promisor is doubtful or the subject of honest and reasonable dispute, the clarification of such right or duty will constitute good and valuable consideration."  Oscar v. Simeonidis, 352 N.J. Super. 476, 487, 800 A.2d 271 (N.J. Super. 2002).  Here, the first arbitration agreement contains legally dubious provisions, such as its exclusion of any punitive damage awards.  To the extent that the 2006 Contract clarifies the arbitration provision so as to do away with these legally questionable provisions, the requirement of new consideration is satisfied.

[2] Because the Court applies the summary judgment standard to a motion to compel arbitration, Plaintiff cannot establish that "fraud" constitutes a genuine issue of material fact merely by way of unsupported assertion.

8

THE ADVICE AND ASSISTANCE OF LEGAL COUNSEL TO REVIEW THE LEGAL
SIGNIFICANCE OF THIS ARBITRATION PROVISION PRIOR TO SIGNING THIS
AGREEMENT." (2006 Contr., App'x A, 1.)

The Supreme Court has said, "It will not do for a [person]
to enter into a contract, and, when called upon to respond to its
obligations, to say that he did not read it when he signed it, or
did not know what it contained." Upton v. Tribilcock, 91 U.S.
45, 50 (1875) (emphasis added); see also Sheet Metal Workers
Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.,
673 F. Supp. 2d 313, 328 (D.N.J. 2009) ("Walking blindfolded
through one's business affairs does not excuse the ensuing
collision."). Courts excuse a party's failure to apprehend a
contracts' terms only in rare cases. In American Heritage Life
Ins. Co. v. Lang, for example, the Fifth Circuit excused a party
who had relied upon a misrepresentation in signing a contract,
but only because he was blind and therefore justified in relying
upon the misrepresentation. 321 F.3d 533, 537-39 (5th Cir.
2003). Here, by contrast, Plaintiffs must bear responsibility
for their own failure to understand the 2006 Contract before
signing it. Accordingly, in deciding whether the parties agreed
to arbitrate, the 2006 Contract will control.

### b.   Unconscionability

Plaintiffs next argue that the 2006 Contract is
unenforceable because it is unconscionable.

The Federal Arbitration Act ("FAA") was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 89 (2000) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). "[T]he FAA establishes a strong federal policy in favor of resolution of disputes through arbitration and, absent fraud or misrepresentation, requires enforcement of arbitration clauses within agreements for which parties freely contract." Litman v. Cellco Partnership, No. 07-4886, 2008 WL 4507573, *7 (D.N.J. Sept. 29, 2008) (citing Morales v. Sun Constructors, 541 F.3d 218, 221-23 (3d Cir. 2008)). New Jersey shares this "strong public policy . . . favoring arbitration as a means of dispute resolution . . . ." Alamo Rent-A-Car, Inc. v. Galarza, 306 N.J. Super. 384, 389, 703 A.2d 961 (1997). New Jersey courts have described this public policy as "compelling," Gras v. Associates First Capital Corp., 346 N.J. Super. 42, 54, 786 A.2d 886 (2001), and have insisted that the State accords a "favored status" to arbitration. Alamo, 306 N.J. at 389. Nonetheless, "arbitration provisions may be attacked under such grounds as exist at law or in equity for the revocation of a contract." Morales, 541 F.3d at 221. Thus, arbitration agreements have a strong presumption of validity, but will not be enforced if genuinely

unconscionable.  See, e.g., Muhammad v. County Bank of Rehoboth
Beach, 189 N.J. 1, 12, 912 A.2d 88 (2006).  To establish
unconscionability, the burden of proof lies with Plaintiffs, who
are challenging the arbitration provision.  See, e.g., Harris v.
Green Tree Financial Corp., 183 F.3d 173, 181 (3d Cir. 1999).

New Jersey courts analyze two factors in making
determinations of unconscionability: (1) procedural
unconscionability, or "unfairness in the formation of the
contract," which "can include a variety of inadequacies, such as
age, literacy, lack of sophistication, hidden or unduly complex
contract terms, bargaining tactics, and the particular setting
existing during the contract formation process," and (2)
substantive unconscionability, which generally involves harsh,
unfair, or disproportionately one-sided terms.  Sitogum Holdings,
Inc. v. Ropes, 352 N.J. Super. 555, 564-66, 800 A.2d 915 (2002).

### I.   Procedural Unconscionability

The gravamen of procedural unconscionability is whether one
party lacked a meaningful choice in entering the agreement.
Lucey v. FedEx Ground Package Systems, Inc., No. 06-3738, 2007 WL
3052997, *4 (D.N.J. Oct. 18, 2007), aff'd in part, 305 F. Appx.
875 (3rd Cir. 2009).  The mere fact that a contract is a
"contract of adhesion" does not render it procedurally
unconscionable.  Gras, 346 N.J. Super. at 48 ("The finding of an
adhesive contract is not dispositive of the issue of

11

enforceability." (internal citation omitted)).

Here, the 2006 Contract lacks the indicia of procedural unconscionability necessary to invalidate an adhesion contract. The contract's terms were neither hidden nor so complex that May Hunish and her son (who held power-of-attorney) could not reasonably have understood them.  "[M]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable . . ." Gilmer, 500 U.S. at 33.  Accordingly, the contract is not procedurally unconscionable.

### ii.  Substantive Unconscionability

Neither is the arbitration provision of the 2006 Contract substantively unconscionable.  "An arbitration provision is substantively unconscionable when it unreasonably favors the party with greater bargaining power." Lucey, 2007 WL 3052997, *6.  This typically occurs when the arbitration agreement does not apply to each party equally.  See, e.g., Contorno v. Wiline Networks, Inc., No. 07-5865, 2008 WL 1944825, *6 (D.N.J. May 1, 2008); Delta Funding Corp. v. Harris, 396 F. Supp. 2d 512, 521 (D.N.J. 2004).  The Supreme Court of New Jersey recently found a contract term barring class arbitration to be substantively unconscionable, because, "To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost

12

equivalent to closing the door of justice to all small claimants." <u>Muhammad</u>, 189 N.J. at 20 (emphasis added).

By contrast, the 2006 Contract applies to both claimants and defendants equally.  Limitations on matters such as discovery will inhibit both sides to an equal extent.  In short, the 2006 Contract is well within the bounds of contracts approved by both this Court and by the Third Circuit.

    c.    **<u>Who is Bound by the 2006 Arbitration Provision?</u>**

Plaintiffs next seek to evade the duty to arbitrate by propounding a series of arguments (notably, some inconsistent with others) to reach the conclusion that the parties lacked legal capacity to bind one another.

As previously mentioned, the arbitration agreement appears in the 2006 Contract as an appendix, which is signed independently of the Contract's main text.  Warren Buirch signed the arbitration agreement "Warren Buirch <u>P.O.A.</u>" (emphasis added) on the line labeled "Resident or Legal Representative Signature," indicating that he believed himself to be, and represented to Defendant that he was, acting as May Hunish's agent with proper power-of-attorney.

In fact, Warren Buirch was designated as holder of May Hunish's power-of-attorney in two separate documents: a healthcare power-of-attorney (the "Healthcare POA"), which became operative only when May Hunish became "unable to make or

communicate treatment decisions," (Pl.'s Ex. F [Dkt. Ent. 13]), and a general power-of-attorney (the "Durable POA"), which became operative immediately upon its execution (Pl.'s Ex. E [Dkt. Ent. 13]).  Notably, the Durable POA includes a provision protecting third-parties like Defendant.  In section 5.2 it provides, "No person, who acts in reliance upon any representation my Agent may make as to . . . the fact that my Agent's powers are then in effect . . . shall incur any liability to me . . . for permitting my Agent to exercise any such authority . . . ."  (Pl.'s Ex. E, at 10 [Dkt. Ent. 13].)  In other words, under section 5.2 of the Durable POA, May Hunish (and her estate) may not disclaim the obligations undertaken on her behalf by Warren Buirch.

Nonetheless, Plaintiffs persist in arguing that Warren Buirch lacked authority to bind May Hunish, because, they say, neither the Healthcare POA nor the Durable POA were in force when Warren Buirch signed the 2006 Contract.  Because the Healthcare POA controls healthcare decision-making, Plaintiffs argue, its provisions, rather than those of the Durable POA, govern the signing of a contract to reside at an assisted-living facility. However, the Healthcare POA had not yet been triggered by May Hunish's condition, Plaintiffs reason, since she was not yet "unable to make or communicate treatment decisions . . . ." (Pl.'s Ex. F [Dkt. Ent. 13].)  Plaintiffs therefore maintain that Warren Buirch was not empowered to act as agent for May Hunish.

14

This argument suffers from a number of defects.  First, as previously mentioned, even assuming the argument's merit, section 5.2 of the Durable POA estops the Hunish estate from disclaiming the authority of Warren Buirch to act as May Hunish's agent.  Second, the argument presumes, incorrectly, that only one of the two powers-of-attorney may govern a particular transaction.  New Jersey law however contemplates that multiple powers-of-attorney will be complementary and concurrently effective.  <u>See</u> N.J. Stat. Ann. § 46:2B-8.10 ("Unless expressly so provided, the subsequent execution of another power of attorney does not revoke a power of attorney.").  In other words, the Durable POA was still applicable to healthcare-related decisions even before the Healthcare POA was triggered.[3]

_____

[3] Plaintiffs cite <u>Hendrix v. Life Care Centers of America, Inc.</u>, No. E2006-02288, 2007 WL 4523876, *1 (Tenn. Ct. App. Dec. 21, 2007), and <u>In re McKibbon</u>, 977 So.2d 612, 613 (Fla. Dist. Ct. App. 2008), for the proposition that a healthcare power-of-attorney trumps a general power-of-attorney for purposes of residence at an assisted living facility.  Plaintiffs misread these cases.  In <u>In re McKibbon</u>, the dispositive issue was that nothing in the controlling power-of-attorney document gave the resident's son the legal authority to enter into an arbitration agreement.  977 So.2d at 613.  Here, by contrast, the Durable POA specifically gave Warren Buirch the power to "take whatever legal action may be necessary on my behalf" (§ 2.8), as well as powers related to "resort to courts" (§ 4.1).  In <u>Hendrix</u>, the dispositive issue was that the general power-of-attorney specifically stated, "In the event I have executed a valid Durable Power of Attorney for Health Care and in the event there is any conflict between the two documents, <u>it is my intention that the Durable Power of Attorney for Health Care shall be controlling</u>."  2007 WL 4523876, *3 (emphasis added).  Neither power-of-attorney in this case has any such language.  In fact, the introductory paragraph of Hunish's Durable POA states, "I

Finally, the Hunish estate is estopped from disclaiming the 2006 Contract's obligations after May Hunish accepted its benefits. "In the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." See International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000). "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." Id. (citing Avila Group, Inc. v. Norma J. of California, 426 F.Supp. 537, 542 (S.D.N.Y. 1977)). Even if May Hunish or her agent did not properly execute the contract, her estate is equitably estopped from disclaiming it now, particularly since it concurrently seeks to enforce provisions of the very same contract.

Accordingly, the 2006 Contract, including its arbitration agreement, is binding upon the Hunish estate.

---

hereby revoke all powers of attorney, general and/or limited, heretofore granted by me as Principal and terminate all agency relationships created thereunder . . . ." (Pl.'s Ex. E, at 1.) Although this document was executed on the same day as the Healthcare POA (January 6, 2005), this language suggests an intent that the Durable POA trump the Healthcare POA in the event of a conflict.

16

### d.  <u>Claims of Todd and Warren Buirch as Individuals</u>

Warren and Todd Buirch bring a number of claims on their own behalf.  (Compl. cts. 3-5, 8-12.)  Although Defendant seeks to enforce the arbitration agreement against them, it is the general rule that, "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960).  "It is beyond the power of the parties [to an arbitration agreement] to prevent the exercise of a right of action by those who are not parties to the agreement."  <u>Williston on Contracts</u>, <u>supra</u>, at § 57:19.  As the Supreme Court recently held, "[A]rbitration 'is a matter of consent, not coercion,'" <u>Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.</u>, No. 08-1198, 559 U.S. __, slip op. at 17 (Apr. 27, 2010) (quoting <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 479 (1989)).

It is undisputed that Todd Buirch, May Hunish's grandson, did not assent to the arbitration agreement.  Warren Buirch, who signed the contract only in his capacity as May Hunish's agent, also did not assent to compulsory arbitration for his own injuries.[4]  <u>See</u> <u>Williston on Contracts</u>, <u>supra</u>, § 35:37

---

[4] Noting that Warren Buirch signed the arbitration agreement twice -- first above the words "Your signature" and again above the words "Legal Representative Signature" -- Defendant argues

(discussing "the general rule that an agent contracting on behalf of a disclosed principal is not personally liable [under the contract]" (citing Restatement (Second) of Agency § 146)); <u>John Roach, Jr., Inc. v. Pingpank</u>, 39 N.J. Super. 336, 339, 121 A.2d 32 (1956) ("[N]ormally a[n agent entering a contract] in behalf of a fully disclosed principal assumes no responsibility therefor."). Accordingly, neither Warren Buirch nor Todd Buirch are bound by the arbitration agreement.

Although Warren and Todd Buirch did not assent to the arbitration agreement, Defendant nonetheless contends that their claims should be sent to arbitration along with the claims of the Hunish estate. Although some courts have required arbitration agreement nonsignatories to arbitrate their claims, this

---

that Warren Buirch bound both May Hunish and himself individually.

The Court understands the two signatures as an anomaly and nothing more. The arbitration agreement begins by stating, "This Arbitration Agreement is made by and between <u>Maurice House</u> ('Residence') and <u>May Hunish</u> ('You' and 'Your')." (2006 Contr., App'x A.) The 2006 Contract unambiguously aims to create legal obligations for Defendant and the elderly resident -- not her family members. For example, the 2006 Contract repeatedly references "Your Apartment," "Your personal property," and "Your cognitive, recreational, and social needs." It cannot seriously be said that the Contract sought to include within the meaning of "You" and "Your" a resident's family members. It would not reasonably have been within the contemplation of Warren Buirch that by signing the arbitration agreement to secure his mother's residency, he was also limiting his own remedies in the event that he, say, slipped and fell while on Defendant's premises. Clearly, the Contract's drafters envisioned the line marked "Your signature" to be for the signature of the resident herself. Warren Buirch did not alter his legal status by the fortuitous fact of his signing his name on the wrong line.

departure from the general rule has occurred only in three narrow circumstances.  First, when a nonsignatory has brought a suit as a signatory's agent, courts have required arbitration.  Williston on Contracts, supra, § 35:37 ("[N]onsignatories may be bound by arbitration agreements entered into by others where they have no greater rights than those of the party through whom they claim . . . .").  Second, when a nonsignatory has asserted rights flowing from the contract (because, for example, the nonsignatory is a successor-in-interest of a signatory), courts have required arbitration.  See, e.g., Int'l Paper Co., 206 F.3d at 411 (enforcing an arbitration agreement against a second-hand purchaser of a consumer product who was asserting breach-of-contract claims against the manufacturer, even though only the first purchaser had actually signed the arbitration agreement). Finally, third, some courts have enforced arbitration agreements against nonsignatories when the claims were closely interrelated, but, importantly, the Third Circuit has eschewed this approach. See E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin, 269 F.3d 187, 202 (3d Cir. 2001) (holding that enforcing an arbitration agreement against a nonsignatory is inappropriate when "based solely on the interrelatedness of the claims alleged," and that such enforcement is permissible only when the nonsignatory's "conduct falls within one of the accepted principles of agency or contract law that permit doing so").

19

Based upon the foregoing, of the claims that Warren and Todd Buirch bring on their own behalf, the Court will compel arbitration only for those that assert rights flowing from the Contract. Specifically, Counts Three ("Misrepresentation and Fraud in the Inducement"), Four ("Breach of Covenant of Good Faith and Fair Dealing"), Five ("Unjust Enrichment"), Eight ("Survivorship Action"), Eleven ("Conspiracy to Violate RICO"), and Twelve ("Violation of NJ-RICO"), all seek to impose liability upon Defendant for its conduct in obtaining assent to and performing the Contract. Of course, Counts Three, Four, Five, and Eight are each contract claims. Counts Eleven and Twelve, although not on their face contract claims, seek, <u>inter alia</u>, recovery for the alleged misconduct of Defendant in requiring payment for May Hunish's financial obligation -- a contractual duty. (<u>See</u> Compl. ct. XI, ¶ 9(1).) Certainly, it would be inequitable for Warren and Todd Buirch to claim benefits flowing from the 2006 Contract without assuming its corollary burdens. <u>See</u> <u>Int'l Paper Co.</u>, 206 F.3d at 411. In other words, Plaintiffs should not be permitted to do an end-run around the arbitration requirement by simply naming nonsignatories to the 2006 Contract as the parties asserting its benefits.

The remaining claims of Warren and Todd Buirch -- Counts Nine ("Intentional Infliction of Emotional Distress") and Ten ("Negligent Infliction of Emotional Distress") -- assert rights

of non-contracting parties that do not flow from the contract.
Accordingly, the Court will not compel Warren and Todd Buirch to
litigate these claims before an arbitrator.

Although the Court will not compel arbitration of Warren and
Todd Buirch's claims in Counts Nine and Ten, it would create
extraordinary judicial inefficiency to require the parties to
litigate these substantially similar and interrelated matters
before two tribunals.  Further, because Warren and Todd Buirch
would be parties to both proceedings, this Court may ultimately
be bound by any findings of fact or conclusions of law resulting
from the arbitration.  See Sheet Metal, 673 F. Supp. 2d at 320-22
(discussing the law of preclusion as applied to arbitration
proceedings).  It would work a needless hardship on the parties
and the Court to require litigation of this matter here, only to
conclude months or years from now that the efforts before this
Court were futile because the arbitration's outcome is binding.
Conversely, if the arbitrator were ultimately bound by findings
of this Court, then Plaintiffs would successfully have thwarted
the arbitration requirement.  Accordingly, the Court will stay
the tort-law claims of Warren and Todd Buirch pending the
arbitration of their claims, as well as those of May Hunish.  See
Harvey v. Joyce, 199 F.3d 790, 795-96 (5th Cir. 2000) (staying

the claims of a co-party pending compulsory arbitration).[5]

**CONCLUSION**

For the reasons stated herein, the motion to compel
arbitration will be partially granted and partially denied:
arbitration will be required of all claims, except those set
forth in Counts Nine and Ten of the Amended Complaint.  The
remaining claims will be stayed pending conclusion of the
arbitration.  An Order will accompany this Opinion.


Dated: May 6, 2010                    s/Renée Marie Bumb
                                      RENÉE MARIE BUMB
                                      UNITED STATES DISTRICT JUDGE


---

[5] The Court is aware that Defendant has moved to dismiss
these claims.  (Mot. to Dism. [Dkt. Ent. 32].)  Mindful that
courts should decide only the questions they must decide, PDK
Labs., Inc. v. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C.
Cir. 2004) (Roberts, J., concurring), the Court will deny this
motion without prejudice.  Should these claims come before the
Court at the arbitration's conclusion, Defendant will have leave
to move to dismiss these claims at that time.